UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.I.R.M., et al., | No. 2:26-cv-01543-DJC-AC |
| Petitioners, | |
| v. | ORDER |
| MARKWAYNE MULLIN, et al., | |
| Respondents. | |

Petitioners are noncitizens who have been granted deferred action pursuant to their U visa applications.  In March 2026, Petitioner M.I.R.M. was summoned to an Immigration and Customs Enforcement ("ICE") Office and instructed to return on April 27, 2026, with her son, "travel plans," and their passports.  Petitioners then filed a Petition for Writ of Habeas Corpus, asking this Court to enjoin Respondents from detaining and deporting them.  Respondents filed a Motion to Dismiss, arguing this Court lacks jurisdiction over the Petition because Petitioners are not "in custody" as required for Petitioners to seek habeas relief.  For the reasons stated below, the Court finds it has jurisdiction over the Petition, denies Respondents' Motion to Dismiss, and grants the Petition.

**BACKGROUND**

Petitioner M.I.R.M. is a 29-year-old citizen of Mexico and Petitioner T.I.R.R. is her 14-year-old son.  (Pet. (ECF No. 1) ¶¶ 18–19.)  Both Petitioners are noncitizens who were paroled into the United States in 2016 pursuant to 8 C.F.R. § 212.5.  (*Id.* ¶ 20.)  Sometime thereafter, Petitioner M.I.R.M. filed an asylum application with Petitioner T.I.R.R. as a derivative.  (*Id.* ¶ 21.)  An Immigration Judge denied the application and Petitioners were ordered removed.  (*Id.*)

In September 2022, Petitioner M.I.R.M.'s husband and Petitioner T.I.R.R.'s father "was the victim of an unprovoked attack in his front yard by a stranger, who pursued and stabbed Petitioner's husband with a knife while filming the attack on a cell phone."  (*Id.* ¶ 22.)  M.I.R.M.'s husband "suffered substantial physical and mental harm as a result of the assault, and he assisted authorities in the eventual prosecution of the perpetrator."  (Mot. for TRO (ECF No. 3) at 7.)  In November of that year, Petitioner M.I.R.M.'s husband filed an I-918 application for a U visa with Petitioners as derivative applicants.  (Pet. ¶ 23.)  This type of visa may be issued to an individual who has "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity," "possesses information concerning [that] criminal activity," and "has been helpful, is being helpful, or is likely to be helpful" to law enforcement "investigating or prosecuting [that] criminal activity."  8 U.S.C. § 1101(a)(15)(U)(i).  Petitioners concurrently requested a waiver of all prior grounds of removability.  (Pet. ¶ 23.)  A month later, ICE approved a stay of removal and Petitioners were released on an Order of Supervision, which set certain conditions on that release.  (*Id.* ¶ 24; *see also* Pet., Ex. 4 (ECF No. 1-4).)

In February 2025, U.S. Citizenship and Immigration Services ("USCIS") issued a Bona Fide Determination ("BFD") Notice to Petitioners, granting them deferred action because their U-2 visa applications were approvable.  (Pet. ¶ 25.)  "There is a statutory cap of 10,000 U visas that may be issued each year, a figure routinely exceeded by the number of petitions filed."  *B.D.A.A. v. Bostock*, No. 6:25-cv-02062-AA, 2025 WL

3484912, at *5 (D. Or. Dec. 4, 2025) (cleaned up).  Therefore, individuals, like Petitioners, who otherwise qualify but cannot yet be granted visas due to the statutory cap are placed on a "waiting list, where they receive interim benefits, including deferred action, which protects them against removal from the United States."  *Id.* USCIS also granted Petitioner M.I.M.R. an Employment Authorization Document ("EAD") valid for four years.  (Mot. for TRO at 7; ECF 1-1 ¶ 10.)

However, in March 2026, over a year after Petitioners had been granted BFDs, deferred action, and an EAD, Petitioner M.I.R.M. was summoned to an ICE Office and instructed to return on April 27, 2026, with her son, "travel plans," and their passports.  (Pet. ¶ 3; *see also* Mot. for TRO at 7.)

Petitioners filed a Petition for a Writ of Habeas Corpus (Pet. (ECF No. 1)) and a Motion for Temporary Restraining Order.  (Mot. for TRO (ECF No. 3).)  Respondents then filed a Motion to Dismiss the Petition.  (Mot. to Dismiss (ECF No. 8).)  Petitioners filed an Opposition to this Motion.  (Opp'n to Dismissal (ECF No. 9).)

**DISCUSSION**

**I.   Habeas Jurisdiction**

Respondents argue this Court lacks jurisdiction over Petitioners' habeas petition because Petitioners are not presently "in immigration custody" and the "only relief available in habeas is release from custody."  (Mot. to Dismiss at 1.)

This Court may grant a writ of habeas corpus to any individual "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Supreme Court has "very liberally construed the 'in custody' requirement for purposes of federal habeas," *Maleng v. Cook*, 490 U.S. 488, 492 (1989), such that individuals "subject to restraints 'not shared by the public generally'" qualify.  *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345, 351 (1973) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (explaining that a "person need not be physically imprisoned to be in custody under the statute; instead,

3

habeas relief is available where the individual is subject to restraints not shared by the public generally" (internal quotation marks omitted)).

Petitioners qualify as "in custody" for purposes of habeas jurisdiction because they are subject to several restraints to which the general public is not.  Under the Order of Supervision, Petitioners must "appear in person at the time and place specified, upon each and every request of the agency," "appear for medical or psychiatric examination" at the agency's request, and "furnish written notice" of "any change of residence or employment 48 hours prior to such change." (Pet., Ex. 4 at 1.) A violation of these conditions can result in revocation of Petitioner M.I.R.M.'s ability to work, revocation of Petitioners' out-of-custody statuses, and criminal prosecution. (*Id.* at 3.)  The general public is certainly not subject to such requirements, and the Supreme Court has found similar conditions render an individual "in custody."  *See Hensley*, 411 U.S. at 348, 351 (finding individual released on his own recognizance who was required to "appear at all times and places as ordered by the court or magistrate" and was subject to re-arrest or criminal prosecution for failure to appear qualified as "in custody" such that he could seek habeas relief).

Further, the fact that Petitioners do not seek habeas relief from their current custodial conditions but rather from future custody does not bar their claims. "[H]abeas corpus relief is not limited to immediate release from illegal custody" but rather "is available as well to attack future confinement and obtain future releases." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).  As Petitioners are presently in a qualifying form of custody, they may seek habeas relief from future confinement.  *Id.* (finding that the claims of petitioners who alleged act "was causing or would cause them to be in illegal physical confinement" fell "squarely within [the] traditional scope of habeas corpus"); *see also Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025) (holding petitioner who was "presently in immigration custody" on an Order of Supervision "need not seek immediate release

of that custody for habeas corpus relief to be available" but rather could "attack her future confinement by ICE" (cleaned up)).

Therefore, this Court has jurisdiction to hear Petitioners' claims for habeas relief as they are "in custody" for purposes of section 2241(c)(3). *See Sun*, 2025 WL 2730235, at *3 (holding individual subject to Order of Supervision with conditions similar to those of Petitioners here could seek habeas relief from future immigration detention); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (granting habeas relief against future re-detention by ICE to individual previously released on bond); *Zakzouk v. Becerra*, No. 25-cv-06254-RFL, 2025 WL 2097470, at *4 (N.D. Cal. July 26, 2025) (granting preliminary relief against future re-detention for individual previously released on own recognizance under an Order of Supervision).

**II. Deferred Action Prevents Petitioners' Removal**

Petitioners argue any attempt to detain Petitioners at their upcoming check-in would be unlawful as they have been granted deferred action. The Court finds Petitioners are correct as the Government lacks a lawful basis for their detention.

The Government cannot detain Petitioners in order to remove them as their deferred action status prevents their removal. ICE appears poised to detain Petitioners to effectuate their removal, as indicated by the request that Petitioners appear with "travel plans" and their passports. However, Petitioners have presented evidence that they have both been granted BFDs and deferred action status and that Petitioner M.I.R.M. has an EAD (*see* ECF 1-1 ¶¶ 1, 5, 10; *see also* ECF No. 1-2), and Respondents do not argue or present any evidence to the contrary. (*See generally* Mot. to Dismiss.) Deferred Action is "a form of prosecutorial discretion whereby the Department of Homeland Security declines to pursue the removal of a person unlawfully present in the United States." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017); *see also De Sousa v. Dir. of USCIS*, 755 F. Supp. 3d 1266, 1270 (N.D. Cal. 2024) ("'Deferred action' refers to an 'exercise in administrative discretion' under which 'no action will thereafter be taken to proceed' with the

5

applicant's removal from the United States." (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999)).  Ninth Circuit cases confirm "that deferred action prevents recipients' removal from the United States."  *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 912 (W.D. Wash. 2025) (collecting Ninth Circuit cases) (W.D. Wash. July 24, 2025); *see also Gama v. Bondi*, No. 2:25-cv-01925-TL, 2025 WL 3559942, at *3 (W.D. Wash. Dec. 12, 2025) (explaining that "[n]ot only has the Supreme Court provided guidance for the definition of deferred action, but opinions in the Ninth Circuit also have confirmed that a grant of deferred action prevents its recipient's removal from the United States").  Therefore, Petitioners' deferred action status prevents their removal.  *See id.* at *1, *3 (holding petitioner whose "wife included him as a qualifying family member on the [U visa] application" and who received BFD, deferred action, and employment authorization could not be removed and thus respondents had "no legal basis to detain Petitioner"); *Sepulveda*, 794 F. Supp. 3d at 914 (finding the argument "that the Government will refrain from executing his removal—finds strong support in Supreme Court precedent, circuit authority, and USCIS policy" and, therefore, that petitioner had "shown a likelihood of success on his habeas petition that his detention is unlawful").

* * *

As Respondents do not assert any other statutory basis on which they can detain Petitioners, the Court finds the Government lacks the statutory authority to do so.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1.  Petitioners' Motion to Proceed under a Pseudonym (ECF No. 2) is GRANTED.

2.  Respondents' Motion to Dismiss (ECF No. 8) is DENIED.

3. The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[1]

4. Respondents are ENJOINED AND RESTRAINED from detaining or deporting Petitioners absent a showing of changed circumstances.

5. Petitioners' Motion (ECF No. 10) is DENIED AS MOOT.

6. The Clerk of the Court is directed to close this case and enter judgment for Petitioners.  The Court retains jurisdiction to enforce this Order.

7. This Order resolves all pending motions.

IT IS SO ORDERED.

Dated:    **April 24, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – M.I.R.M.26cv01543.merits

---

[1] In the interests of judicial economy, the Court declines to address the remaining grounds for relief in the Petition.

7